# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**ANTHONY C. BARRETT,**

       **Petitioner,**                    **CASE NO. 2:12-CV-1130**
                                                  **CR. NO. 2:11-cr-173(1)**

       **v.**

                                             **JUDGE ALGENON L. MARBLEY**

**UNITED STATES OF AMERICA,**            **Magistrate Judge Kemp**

       **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner Anthony C. Barrett has filed a motion to correct, vacate or set aside his sentence pursuant to 28 U.S.C. §2255. He raises claims of ineffective assistance of trial counsel. After Petitioner executed a waiver of the attorney-client privilege with respect to those claims, the United States filed a response to the motion. Petitioner has filed a reply in support of his motion as well as a motion to amend. For the following reasons, the Court will grant the motion to amend, and will recommend that the motion to vacate be denied.

## I. PROCEDURAL HISTORY

On July 7, 2011, the grand jury indicted Anthony C. Barrett, Henry B. Moore, Jr., and Nathaniel Crews, Jr. Count 1 charged the three defendants with conspiring to commit armed bank robbery. Petitioner and one or more of the other two defendants were also charged with committing the robbery (which took place at a Huntington National Bank Branch located on East Main Street in Bexley, Ohio) and with carrying and brandishing one or more firearms during the robbery (Counts 2 and 3). Finally, the grand jury charged

Petitioner with possessing both firearms and ammunition after having been convicted of three prior violent felonies (Counts 4 and 5). (Doc. 16). Because Petitioner was financially unable to retain counsel, the Court appointed attorney J. Kristin Burkett to represent him. (Doc. 23).

Petitioner was arraigned on July 20, 2011 and pleaded not guilty. The case was set for trial on August 29, 2011. Twelve days before trial, Petitioner signed a plea agreement which obligated him to plead guilty to Counts 2 and 4 of the indictment. He acknowledged that he could be sentenced to up to 25 years in prison for the armed bank robbery and that Count 4 carried a term of imprisonment of between 15 years and life, but he and the United States stipulated to a sentence of 19 years, which would bind the Court if the plea agreement were accepted. Petitioner also waived his right to appeal his sentence or to challenge it collaterally through a §2255 proceeding, but retained the right to challenge his sentence on grounds of ineffective assistance of counsel or prosecutorial misconduct. (Doc. 48, ¶s 1, 2, 11 & 13). Two days later he appeared before Judge Marbley and entered his guilty plea. His plea was accepted and on December 7, 2011, Judge Marbley sentenced Petitioner to a total of 228 months of imprisonment - the agreed sentence of nineteen years - on each of the two counts, to be served concurrently. That sentence is reflected in the judgment and commitment order filed on December 14, 2011. (Doc. 76).

Petitioner did not appeal. However, on December 7, 2012, he filed his motion to vacate. That motion is the subject of this Report and Recommendation.

## II.  THE MOTION TO VACATE

2

In his motion to vacate, as originally filed, Petitioner raised these claims, stated here exactly as they appear in the motion (Doc. 96):

**Ground One:** Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.

**Supporting Facts:** Based on the advice of my attorney, I took a plea deal that was not in my best interest, and I came to the knowledge that the advice I took was bad advice. I also at the time was under the influence of psyotic medication.

**Ground Two:** Conviction obtained by use of coerced confession.

**Supporting Facts:** Based upon the information that I received from my attorney my son was cohersed into stating certain information that lead me to believe that it would be my best interest to plead guilty.

**Ground Three:** Conviction obtained by use of evidence obtained to unlawful arrest.

**Supporting Facts:** My son, my nephew, and myself was arrested unlawfully and was scared into admitting guilt. My life depended upon it. Is there any help for the widows son?

**Ground Four:** Conviction obtained by use of evidence gained to an unconstitutional search and seizure.

**Supporting Facts:** City and Federal officers searched and seized property from my residence with out search warrants. Warrants were obtained, but were not available during the search.

**Ground Five:** Conviction obtained by a violation of the privilege against self-incrimination.

**Supporting Facts:** My son was used against me, in order to get me to plea guilty.

**Ground Six:** Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

3

**Supporting Facts:** No DNA of mine was found at the scene and my fingerprints were not on any weapons.

**Ground Seven:** Conviction obtained by a violation of the protection against double Jeopardy.

**Supporting Facts:** The points used in the sentencing guidelines reflect from prior and past convictions. The State of Ohio arrested me first and charged me with this crime and later dropped the charges and the U.S. picked up the case. Not knowing they do not have jurisdiction.

**Ground Eight:** Denial of Effective Assistance of Counsel.

**Supporting Facts:** I received bad advice from my attorney. I was not advised of the consequences of pleading guilty. My Presentence Report was incomplete and my points were not calculated correctly. I feel I have been mislead and was not given the proper understanding of the federal system by my attorney.

**Ground Nine:** Denial of right to/of appeal.

**Supporting Facts:** I did not know that I would not have a right to Appeal, until the day of my sentencing, when my attorney stated to the Judge. That is when I found out I could not appeal.

In its response, the United States addresses the merits of each of these claims, not asserting any procedural bars arising from either the guilty plea or the failure to appeal. The only waiver argument it raises relates to the last ground for relief; the United States argues that both in the plea agreement and in open court Petitioner affirmatively waived his right to appeal on any grounds other than those specified in the plea agreement. The United States also attached two affidavits to its response, one from Petitioner's trial counsel, Ms. Burkett, and one from Adrienne M. Larrimer, another attorney in Ms. Burkett's office.

4

As noted, Petitioner has filed a reply in support of his motion to vacate in which he appears to make additional allegations about his ineffective assistance of counsel claim, such as the assertion that counsel should have moved for a downward departure based on diminished mental capacity and did not advise him either of the fifteen-year mandatory minimum sentence on Count 4 or the total sentence to which the plea agreement exposed him.  He has also filed a declaration asserting that the United States is in default for failing to answer (Doc. 117) - a position which has no merit because the United States responded to his motion and had no obligation under the Rules Governing Section 2255 Proceedings for the United States District Courts to do more - and a motion to amend.  The motion to amend (Doc. 118) apparently seeks to bring to the Court's attention two recent Supreme Court decisions, *Alleyne v. United States*, 133 S.Ct. 2151 (2013) and *Descamps v. United States*, 133 S.Ct. 2276 (2013).  Petitioner does not actually assert a new claim for relief based on either of these decisions, but the Court will consider whether they have any impact on his case.  To that extent, the motion to amend is **GRANTED**.  The Court now turns to an examination of the claims set out in the motion to vacate.

### III.  DISCUSSION

### A.  WAIVER BY GUILTY PLEA

The Court begins its analysis in this case, as it does in any case in which a criminal defendant has pleaded guilty, by noting that

> a guilty plea represents a break in the chain of events which has preceded it
> in the criminal process. When a criminal defendant has solemnly admitted
> in open court that he is in fact guilty of the offense with which he is charged,

5

> he may not thereafter raise independent claims relating to the deprivation of
> constitutional rights that occurred prior to the entry of the guilty plea. He
> may only attack the voluntary and intelligent character of the guilty plea by
> showing that the advice he received from counsel was [constitutionally
> ineffective].

*Tollett v. Henderson*, 411 U.S. 258 (1973).  Otherwise, a defendant could plead guilty in the

hope of obtaining favorable treatment during sentencing while reserving the right to raise

all manner of constitutional claims if the result of the sentencing process was not as he had

hoped.

Many of Petitioner's claims are directly foreclosed by *Tollett*.  Although his various

assertions of ineffective assistance of counsel as they relate to the decision to plead guilty

are still open for consideration, the claims based on an allegedly coerced confession

(Ground Two), evidence obtained from an allegedly unlawful arrest (Ground Three),

evidence obtained from an allegedly unlawful search and seizure (Ground Four), and the

alleged violation of the privilege against self-incrimination (Ground Five) simply cannot

be raised in his motion to vacate.  *See Reams v. Berry*, 541 F.Supp. 795 (S.D. Ohio June 25,

1982)(claim of coerced confession is foreclosed by guilty plea); *Schultz v. Wellman*, 717 F.2d

301, 307 (6th Cir. 1983)(claim based on "supposedly illegal search and seizure which

occurred during [the] arrest ... was foreclosed by [defendant's] knowing and intelligent

plea of guilty ..."); *Fenner v. Berghuis*, 2006 WL 374171, * (W.D. Mich. Feb. 17, 2006)("An

alleged Miranda violation is not a jurisdictional issue and is waived by a guilty plea").

Thus, the Court need not discuss the merits of any of these claims.

**B.  OTHER CLAIMS NOT BASED ON INEFFECTIVE ASSISTANCE**

It is less certain that Petitioner's claims concerning the withholding of exculpatory evidence (Ground Six) or his claim of a double jeopardy violation (Ground Seven) were waived by his guilty plea.  In *United States v. Ross*, 245 F.3d 577, 584 n.1 (6th Cir. 2001), the Court of Appeals, citing to *Campbell v. Marshall*, 769 F.2d 314 (6th Cir. 1985), said that "[i]n the context of a habeas corpus proceeding, this Court has recognized that a state defendant may raise, after a plea of guilty, a claim that prosecutors withhold exculpatory evidence in violation of *Brady* [*v. Maryland*, 373 U.S. 83 (1963)]."  The continuing validity of this line of cases has been questioned in light of the Supreme Court's decision in *United States v. Ruiz*, 536 U.S. 622 (2002), holding that a guilty plea cannot be challenged on the basis that the prosecution withheld exculpatory impeachment (rather than substantive) evidence from the defendant prior to the guilty plea.  *See McClellan v. Rapelje*, 2010 WL 5294366 (E.D. Mich. Nov. 15, 2010), *adopted and affirmed* 2010 WL 5293957 (E.D. Mich. Dec. 20, 2010). Nevertheless, even if there were any merit to Petitioner's *Brady* claim, under *Marshall* and *Ross*, Petitioner would have to show that had he known of the allegedly favorable evidence, he would not have pleaded guilty.

Nothing in the record supports such a claim.  The statement of facts presented at the plea hearing demonstrated Petitioner's connection to the robbery by way of witness statements identifying him as one of the two men who entered the bank, and through evidence obtained from his parents' residence, including dye-stained money and the

7

weapons used in the robbery.  *See* Doc. 112.  The presence or absence of his DNA in the bank simply does not appear to have been a factor of any kind in Petitioner's decision to plead guilty, and he has not demonstrated that had he known of that fact prior to entering his guilty plea, he would have chosen to go to trial instead.  Further, he has not come forward with evidence that the prosecutor in this case did not, in fact, disclose to his counsel the results of any testing done for DNA at the crime scene or the fact that no such testing had been done.  Without some actual evidence of a *Brady* violation in the first instance, and without anything tying the absence of DNA evidence at the crime scene to petitioner's decision to plead guilty, his Sixth Ground does not provide any basis for avoiding the impact of his guilty plea.

The effect of the guilty plea on Petitioner's double jeopardy claim is also less than clear.  There is some authority that a guilty plea can waive a double jeopardy claim under some circumstances, *see United States v. De Vaughn*, 694 F.3d 1141 (10th Cir. 2012), and some to the opposite effect.  *See, e.g., Gomez v. Berge*, 434 F.3d 940 (7th Cir. 2006); *see also Couch v. United States*, 791 F.2d 931 (6th Cir. Apr. 10, 1986)(Table).  Giving Petitioner the benefit of the doubt, his double jeopardy claim, even if it was not waived, is frivolous.  The sole basis of the claim is that he was first arrested by state authorities on these charges, and that the state charges were then dropped in favor of federal prosecution.  This is not a violation of the Double Jeopardy Clause.  As the Supreme Court explained in *White v. United States*, 515 U.S. 389, 396 (1995), the purpose of that clause is to prevent either subsequent prosecutions or subsequent punishment for the same offense.  If a defendant "was neither prosecuted

8

for nor convicted of the [same] offenses during the first criminal proceeding," the Double Jeopardy Clause does not apply - and petitioner was neither prosecuted for nor convicted of these charges in state court.  Even if the state had completed the prosecution of Petitioner on these charges, however, a subsequent federal prosecution for the same criminal acts would not have been barred.  That is because "successive prosecutions for violating the laws of two separate sovereigns [*i.e.* the State of Ohio and the United States] do not violate the Double Jeopardy Clause."  *United States v. Keeton*, 101 F.3d 48, 50 (6th Cir. 1996), *citing Heath v. Alabama*, 474 U.S. 82, 88-89 (1985).  This claim is completely without merit.

### C.  INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner's first, eighth and ninth grounds for relief all raise, in one way or another, issues of ineffective assistance of counsel.  As support for his first ground for relief, he claims that his attorney gave him "bad advice" which caused him to take a plea deal which was not in his best interests.  As support for his eighth ground for relief, he points to three specific matters about which his attorney was allegedly ineffective, including (1) not telling him of the consequences of the plea; (2) not explaining the "federal system" to him adequately; and (3) not correcting errors in his guideline calculation.  Finally, as support for his ninth ground for relief, he suggests that his attorney did not adequately advise him that he was giving up his right to appeal when he signed the plea agreement.  He has also made a claim that he was unable to comprehend the plea agreement and plea proceedings due to his mental state and medications.

9

As this Court said in *Cornell v. Jeffries*, 2006 WL 2583300, *6-7 (S.D. Ohio Sept. 7, 2006):

> A prisoner may challenge the entry of a plea of guilty on the basis that counsel's ineffectiveness prevented the plea from being knowing and voluntary. *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). The two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), applies to challenges to guilty pleas based on a claim of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Sparks v. Sowders*, 852 F.2d 882, 884 (6th Cir.1988). In order to obtain relief, a prisoner who is challenging the entry of his guilty plea on the basis of counsel ineffectiveness must first show that counsel's advice was not within the range of competence demanded of attorneys in criminal cases. *Hill*, 474 U.S. at 59; *Sparks*, 852 F.2d at 884.

> The second, or "prejudice" requirement on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59; *Sparks*, 852 F.2d at 884.

Petitioner's first ground for relief is too vague to meet this standard. Apart from asserting that his attorney gave him "bad advice," he does not say what advice he supposedly relied on in agreeing to plead guilty in a way that did not serve his best interests. The Court cannot evaluate whether the advice given met the standard of competence demanded of attorneys by the Constitution if it is not told what advice is at issue.

Petitioner's eighth ground for relief, especially as explained more fully in his reply, does identify specific advice his attorney either did nor did not give to him. Leaving aside, for the moment, his claim about whether she should have sought a downward departure,

Petitioner has argued that counsel did not tell him the extent of the sentence which his guilty plea exposed him to, did not inform him that he was facing a mandatory minimum term of fifteen years, and did not otherwise advise him of the "nature of the charge and the consequences of the plea." *Petitioner's reply*, Doc. 116, at 2.  The two affidavits attached to the United States' response directly contradict these assertions, but the Court need not rely on those affidavits in order to decide that these particular claims are groundless.

The matters which Petitioner claims he was unaware of are all matters which are in the plea agreement itself and which he was asked about under oath at the plea hearing. The following quotations from the record of the plea proceedings (Doc. 112) show what Petitioner was asked, and what he answered:

> THE COURT: Have you discussed with your counsel all of the counts in the indictment?
>
> * * *
>
> DEFENDANT BARRETT: Yes, Your Honor.
>
> * * *
>
> THE COURT: Have you discussed with your attorney the maximum possible penalty that could be imposed upon you in this case?
>
> * * *
>
> DEFENDANT BARRETT: Yes, Your Honor.
>
> [Petitioner was then sworn]
>
> THE COURT: Mr. Barrett, the indictment you have received charges you with one count of bank robbery and one count of possession of a firearm and/or ammunition by a person previously convicted of at least three violent felony offenses.

11

Do you understand the nature and meaning of these charges?

* * *

DEFENDANT BARRETT: Yes, Your Honor.

* * *

THE COURT: Has your lawyer advised you fully on the nature and meaning of the charges and any defenses to those charges that you might have?

* * *

DEFENDANT BARRETT: Yes, Your Honor.

* * *

THE COURT: The elements of bank robbery, Mr. Barrett, are .... First, that the defendant did take from the person and presence of bank employees money belonging to or in the care, custody, control, management or possession of a federally-based bank; that the act put in jeopardy the lives of persons by means and use of a dangerous weapon; that such act was done willfully; and the act occurred on or about the date alleged in the indictment in the Southern District of Ohio.

Do you understand, Mr. Barrett, that those are the elements of bank robbery as set forth in Court Two of the indictment?

DEFENDANT BARRETT: Yes, Your Honor.

THE COURT: The elements for Court Four, possession of a firearm and/or ammunition by a person previously convicted of at least three violent felony offenses, are as follows. First, the defendant had been convicted in a court of at least three violent felony offenses, each a crime punishable by imprisonment for a term exceeding one year .

Second, the defendant knowingly possessed a firearm.

Third, the firearm had been shipped and transported in interstate commerce and affected interstate commerce; and, fourth, this act occurred within the Southern District of Ohio, Eastern Division, on or about the date alleged in the indictment.

12

Do you understand that those are the elements of the offense set forth in Count Four?

DEFENDANT BARRETT: Yes, Your Honor.

* * *

THE COURT: ... Mr. Barrett, do you also understand that the maximum possible penalty for bank robbery is 25 years imprisonment, a $250,000 fine, a five-year term of supervised release, and a $100 special assessment? ...

DEFENDANT BARRETT: Yes, Your Honor.

* * *

THE COURT: Mr. Barrett, do you understand that the maximum possible penalty under Count Four is also life imprisonment, a fine of $250,000, a five-year term of supervised release, and a $100 special assessment?  Do you understand that?

DEFENDANT BARRETT: Yes, Your Honor.

* * *

THE COURT: ... I'm going to ask Assistant United States Attorney Dominguez to summarize the essential terms of the plea agreement.

MR. DOMINGUEZ: ... Mr. Barrett, with respect to Count Four, understands there is a mandatory 15-year term of imprisonment ....

However, Your Honor, as reflected in paragraph 11 of Mr. Barrett's plea agreement, he's pled pursuant to a binding plea agreement.  And so he understands, as set forth in paragraph 11, if the Court does not accept the binding plea agreement, then he is, in fact, free to withdraw from the agreement.

* * *

Pursuant to Rule 11(c)(1)(C) of the Rules of Criminal Procedure, with respect to Mr. Barrett's plea agreement, Your Honor, and in accordance with the sentencing factors delineated under 18 United States Code Section 3553(a), the parties stipulate to a binding sentence of 19 years in federal prison.

The parties intend that the stipulated sentence binds the district rout upon acceptance of the plea agreement at the defendant's sentencing hearing.

* * *

Your Honor, with respect to Mr. Barrett's plea agreement, he, in fact, does waive his right to appeal the sentence in case ... and to challenge the sentence collaterally through a post-conviction proceeding under Title 28 United States Code Section 2255 [but] retains his right to appeal his sentence if the United States appeals the sentence, or if the Court imposes a sentence above the statutory maximum.

The defendant further retains any right to challenge the sentence based on a claim of ineffective assistance of counsel or prosecutorial misconduct.

* * *

THE COURT: Mr. Barrett, is this your understanding of the plea agreement?

DEFENDANT BARRETT: Yes, Your Honor.

In addition, the record also shows that Petitioner was given all of the remaining advice about the consequences of his guilty plea, such as the fact that he would not have a trial or be able to cross-examine witnesses, which is required by Fed.R.Crim.P. 11(b)(1). Further, an FBI agent described the crime, stating specifically that Petitioner and one of the co-defendants entered the bank wearing bandannas over their faces and brandishing handguns, that Petitioner took over $7,000 of the bank's money, that dye-stained money and the weapons used in the robbery were recovered from his parents' residence, that the weapons had traveled in interstate commerce, and that Petitioner had three prior convictions for violent felonies - robbery (in 1989), armed robbery (in 1990), and robbery (in 2008).  After that statement, the Court asked Petitioner if those facts were "true and correct in all material respects?" Petitioner replied "Yes, Your Honor."  (Tr. 28).

14

The Supreme Court has stated, concerning the significance of statements made by a defendant under oath at a plea hearing, that "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). This means, as a practical matter, that a defendant may not simply claim later that his answers were untrue and expect to receive relief. When a defendant's assertion that, contrary to his sworn representations in open court, his attorney did not explain the consequences of his plea " is more conclusory than specific," not only is the defendant not entitled to relief, he is not even entitled to a hearing. *See Craig v. United States,* 513 Fed. Appx. 487, 491 (6th Cir. Jan. 31, 2013); *see also Curry v. United States*, 39 Fed. Appx. 993 (6th Cir. July 31, 2002)(defendant's "conclusory allegations that his counsel misadvised him or pressured him to acknowledge his intent are subject to summary dismissal because they are unsupported by specifics and are wholly incredible in the face of the record. ... Further, since the district court carefully conducted a proper, clear, and thorough plea colloquy, any allegedly misleading advice or information given by counsel cannot constitute extraordinary circumstances which would justify granting habeas relief [citations omitted]"). That is the case here.

Petitioner simply cannot avoid the effects of his statements made at the plea hearing by claiming, well after the fact, that they were untrue and that despite the Court's clear explanation of the nature of the charges, the potential punishment, and the exact sentence which Petitioner agreed to (and received), he was so unaware of these matters that his plea should not be viewed as knowing and voluntary. In the end, what his counsel did or did

not tell him prior to the hearing cannot have prejudiced him because the record is clear that before he entered his plea, all of those matters were explained to him, and he said he understood him.  As this Court said in *Jackson v. United States*, 2010 WL 1741340, *7 (S.D. Ohio Apr. 28, 2010) *adopted and affirmed* 2010 WL 2545184 (S.D. Ohio June 16, 2010),

> In view of the record before this Court, petitioner's unsupported allegation in these proceedings that his guilty plea was coerced and not knowing or intelligent; that he did not understand the government's burden of proof, or the elements of the offenses against him; and that did not want to enter a guilty plea, but was forced to do so by counsel's refusal to prepare for trial or the misrepresentations of counsel simply are not worthy of credit.

The Court does note that Petitioner has argued that he was on medication and suffering from psychiatric conditions that affected his ability to understand what was being said to him at the plea hearing.  He has not presented any credible evidence to support this claim, and, again, it is directly contradicted by his statement at the plea hearing that neither his medication nor his conditions affected his ability to understand the proceedings.  That claim, too, is foreclosed.

The only other instance of ineffective assistance of counsel which Petitioner has identified is his counsel's alleged failure to argue for a downward departure based on diminished capacity.  Apart from the fact that there is no evidence in the record that Petitioner suffered from diminished capacity at the time he committed the crimes, such an argument has no place where the plea agreement contains a binding sentence.  Once the Court accepted the agreement, it was required to impose the exact sentence that both Petitioner and the United States had agreed to.  "When a district court accepts a Rule

11(c)(1)(C) plea agreement, 'it is bound by the bargain.'" *United States v. Perez*, 464 Fed. Appx. 467, 468 (6th Cir. Feb. 29, 2012), *quoting United States v. Hodge,* 306 Fed. Appx. 910, 914 (6th Cir. Jan. 9, 2009). Counsel cannot be held ineffective for having failed to argue the unreasonableness of the sentence to which the Petitioner had agreed. "An attorney "cannot be considered deficient for failing to raise claims knowingly and voluntarily waived in the process of plea bargaining," *Durkin v. United States,* 2006 WL 90074, *5 (N.D. Ohio Jan. 13, 2006), *quoting United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994), and those types of claims are waived by a plea agreement containing a binding sentence.

### D.  CLAIMS IN THE AMENDED MOTION

The amendment which Petitioner offered on August 16, 2013, does not contain any specific claim for relief, but it does cite two recent Supreme Court cases, suggesting that Petitioner believes one or both of those cases might have some impact on his conviction or sentence. They do not.

*Alleyne v. United States*, 133 S.Ct. 2151 (2013), the first of the two cases Petitioner cites, relates to the mandatory minimum sentences available for the crime of carrying or brandishing a firearm as prescribed by 18 U.S.C. §924(c). Using or carrying a firearm in relation to a crime of violence carries a five-year mandatory minimum sentence; brandishing a firearm carries a seven-year mandatory minimum. The defendant in *Alleyne* was convicted by a jury of violating §924(c) but the jury did not decide, because it was not asked to, whether he brandished the firearm or merely used or carried it. The district court determined at sentencing that brandishing was involved and applied the longer mandatory

sentence.  The Supreme Court reversed, holding, on authority of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), that any fact which increased a mandatory minimum sentence is an element of the offense and must be tried to a jury.

That case provides no assistance to Petitioner.  He was charged in Count Three of the indictment with brandishing a firearm as part of the bank robbery.  However, he pleaded guilty to Counts Two and Four; as to him, Count Three was dismissed.  It is difficult to see how *Alleyne* applies here.  To the extent that petitioner might be arguing that the facts which subjected him to the mandatory minimum sentence under the Armed Career Criminal Act - the three prior violent felony convictions - are elements of that offense, he is simply wrong; the Court of Appeals has held that the fact and nature of prior convictions are sentencing factors which need not be submitted to a jury.  *See United States v. Mahon*, 444 F.3d 530 (6th Cir. 2006).  But even if they were, Petitioner admitted to the commission of those felonies when he pleaded guilty.  "[W]hen a defendant knowingly admits the facts necessary for a sentence enhancement in the context of a plea, simultaneously waiving his Sixth Amendment right to a jury trial, no *Apprendi* problem arises."  *United States v. Yancy*, 725 F.3d 596, 601 (6th Cir. 2013).

The other Supreme Court decision he has cited is similarly inapplicable.  *Descamps v. United States*, 133 S.Ct. 2276 (2013) addressed the question of what types of prior convictions constitute crimes of violence under the Armed Career Criminal Act, which is the statute underlying Petitioner's conviction on Count Four.  Specifically, the Supreme Court rejected what is called the "modified categorical approach" to such convictions,

holding that if a state offense is "indivisible" - that is, it does not have alternative ways in which the crime can be committed - and it covers both crimes which are crimes of violence and crimes which are not, the federal courts may not consult the records of state court proceedings to determine if the defendant actually engaged in violent conduct when violating the statute.  There,  the defendant's prior conviction for burglary - a crime which, under California law, includes non-violent offenses - could not, according to the Supreme Court, be counted as a prior violent felony even though the defendant may have committed a violent form of the offense.  That was so because in that situation, the federal courts are to focus not on the facts of the offense as committed but on the elements of the crime as set forth by statute; as the Court had said in *Taylor v. United States*, 495 U.S. 575, 600 (1990), sentencing courts are to "look only to the statutory definitions" and not "to the particular facts underlying those convictions."

Here, Petitioner's prior offenses were either robbery or armed robbery, committed in Florida and Ohio.  In both states, the elements of those offenses, as defined by statute, make them crimes of violence.  *See United States v. Mansur*, 375 Fed. Appx. 458, 464 (6th Cir. March 25, 2010)(under Ohio law, "the crime of robbery clearly has as an element the use, attempted use, or threatened use of physical force against another person"); *United States v. Welch,* 683 F.3d 1304 (11th Cir. 2012)(robbery under Florida law is a violent felony for ACCA purposes).  The holding in *Descamps* simply has no application here.  Thus, the Court finds no merit in any of Petitioner's claims.

## IV.  RECOMMENDED DISPOSITION

19

As the Court's discussion of the issues demonstrates, this case presents a fairly straightforward question.  Here, Petitioner signed a plea agreement.  He swore in open court that he understood it, and that he understood the nature of the two crimes to which he was pleading guilty, the minimum and maximum sentences he was facing, and the fact that he and the United States had agreed to ask the Court to impose a specific sentence of 19 years.  He also swore that he understood the proceedings and that neither his mental health issues or his medication made it difficult for him to do so.  After being advised, in plain English, about what charges and penalties he was facing and what sentence he was going to receive, he pleaded guilty.  He gave up any rights he may have had to file motions to suppress evidence or confessions.  Now, after the fact, he argues that his attorney did not properly advise him - but the only things he says she did not tell him are things he swore, in open court, that she did tell him and that he understood.  He got the exact sentence he bargained for.  Is he entitled to relief from that sentence?  The clear answer is no.  The Court therefore **RECOMMENDS** that his motion to vacate (Doc. 96) be **DENIED**.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or

recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).


/s/ Terence P. Kemp
United States Magistrate Judge