# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : Case No. 2:11-cr-173(1) |
| v. | : Chief Judge Algenon L. Marbley |
| ANTHONY C. BARRETT, | : |
| Defendant. | : |

## OPINION & ORDER

This matter comes before the Court on Defendant Anthony Barrett's Motion for Compassionate Release. (ECF Nos. 210 & 211). For the following reasons, Defendant's Motion is **GRANTED**.

## I. BACKGROUND

On December 7, 2011, Mr. Barrett was sentenced to 228 months (19 years) of imprisonment and five years of supervised release for armed bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d); and for possession of a firearm by a person convicted of at least three prior violent felony offenses, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). (ECF No. 76). The guideline sentencing range was 262–327 months. (ECF No. 70 at 1). Pursuant to a binding plea agreement (ECF No. 48), Mr. Barrett received a below-guideline sentence. Mr. Barrett represents that his "statutory release date is October 6, 2027"; though, "as an Elder Offender [his] release date is February 20, 2024." (ECF No. 210 at 1).[1]

On December 14, 2020, Mr. Barrett filed his first *pro se* Motion for Compassionate Release. (ECF No. 199). In an Opinion and Order dated February 16, 2021, this Court found that

---

[1] Public records from the Bureau of Prisons place the projected release date as *November* 6, 2027. (*See* ECF No. 215-2). The Court could not independently verify Mr. Barrett's elder release date.

1

"Mr. Barrett's kidney disease, high blood pressure, and diabetes," in conjunction with his "heightened vulnerability" to COVID-19, constituted "extraordinary and compelling reasons" for a sentence reduction. (ECF No. 203 at 3–4). After considering the sentencing factors in 18 U.S.C. § 3553(a), however, the Court found the seriousness of Mr. Barrett's underlying offense and criminal history weighed against early release. (ECF No. 203 at 6). As such, the Court denied Mr. Barrett's motion without prejudice. (*Id.* at 7).

On November 12, 2021, Mr. Barrett filed his second *pro se* Motion for Compassionate Release. (ECF No. 210). Mr. Barrett again raises his medical conditions and highlights his failing eyesight and worsening kidney disease, which has progressed from stage 1 to stage 3 during his incarceration. (*Id.* at 3–4; ECF No. 216 at 5). Mr. Barrett also elaborates on his rehabilitation and family support. (ECF No. 210 at 5–6). He supplemented his Motion on December 31, 2021, to correct a small factual misstatement regarding his wife's medical needs. (ECF No. 211). After Mr. Barrett's Court-appointed counsel declined to file a further supplement (ECF No. 214), the Government filed an opposition on April 25, 2022. (ECF No. 215). The Government reincorporates its prior brief, argues that Mr. Barrett's health conditions do not rise to "extraordinary and compelling," and explains that the sentencing factors continue to weigh against release. (*Id.*). Mr. Barrett replied on May 3, 2022 (ECF No. 216), and submitted a number of supplemental exhibits. (ECF Nos. 217 (course completion records), 219 (letters of support), 220 (letter of support)). The matter now stands ripe for adjudication.

## II.   APPLICABLE LAW

Pursuant to 18 U.S.C. § 3582(c), a sentencing court "may reduce the term of imprisonment" of a defendant who has exhausted administrative rights and who shows "extraordinary and compelling reasons [to] warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). This type of

2

sentence reduction is known more commonly as "compassionate release." A district court's grant or denial is discretionary, though the court must "supply specific factual reasons for [its] compassionate release decisions." *United States v. Jones*, 980 F.3d 1098, 1101–02 (6th Cir. 2020).

In *Jones*, the Sixth Circuit set forth a three-step framework for district courts to follow when considering motions for compassionate release. *Id*. at 1107–08. After clearing the threshold requirement of exhaustion, *see United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020), the substantive analysis proceeds as follows:

> At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). At step two, a court must "find[ ]" whether "such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission." *Id*. § 3582(c)(1)(A) (emphasis added). . . . At step three, "§ 3582(c)[ (1)(A) ] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Id*.

*Jones*, 980 F.3d at 1107–08 (alterations original).

Each step is a mandatory prerequisite to attaining compassionate release, so a defendant's failure to satisfy any will compel denial of the motion. *See United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021) ("[D]istrict courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others. Of course, in granting a compassionate-release motion, district courts must address all three steps." (internal citations omitted)).

### III.   ANALYSIS

#### A.   Exhaustion of Administrative Remedies

Administrative exhaustion is a threshold requirement in any motion for compassionate release. This condition is satisfied when a defendant "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a [compassionate release] motion on the

defendant's behalf or [upon] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *see also Alam*, 960 F.3d at 832. The Sixth Circuit has held that this requirement is not jurisdictional, but rather "a claim-processing rule" that "binds the courts only when properly asserted and not forfeited." *Id.* at 833.

Mr. Barrett submitted a request for release to the Warden on October 2, 2020, prior to his first Motion. (*See* ECF No. 203 at 3). The Warden denied his request on October 22, 2020. (*Id.*). The Government's response does not raise an exhaustion defense (*see* ECF No. 215); and their brief opposing Mr. Barrett's first Motion, which they incorporate by reference, conceded the issue. (ECF No. 202 at 6). As such, the Court is satisfied Mr. Barrett has exhausted administrative remedies.

### B. Extraordinary and Compelling Reasons

Turning to the merits, the Court must determine whether "extraordinary and compelling reasons" warrant a sentence reduction. This court has "full discretion to define 'extraordinary and compelling' without consulting the policy statement [U.S.S.G.] § 1B1.13." *Jones*, 980 F.3d at 1111 (instructing that courts "may skip step two" where a compassionate release motion is filed directly by an incarcerated person, as § 1B1.13 refers only to a "motion of the Director of the Bureau of Prisons").

When ruling on Mr. Barrett's first Motion for Compassionate Release, this Court held that Mr. Barrett's medical conditions, combined with the heightened risk posed to him by the COVID-19 pandemic, constituted "extraordinary and compelling reasons." (ECF No. 203 at 4). Recently, the Sixth Circuit has narrowed the set of circumstances in which risks associated with COVID-19

4

may be considered "extraordinary and compelling."[2] Recognizing these changes, as well as Mr. Barrett's vaccination status,[3] the Court cannot simply reiterate its finding of "extraordinary and compelling reasons" in the previous Opinion. Mr. Barrett's second Motion demands a new analysis.

While Mr. Barrett does discuss concerns related to COVID-19 in his second Motion, he rests on the progression of his medical ailments and his diminishing ability to provide self-care in a prison facility. (ECF No. 216 at 8).[4] Mr. Barrett is alluding to the policy statement contained in § 1B1.13, which predates the COVID-19 pandemic, discussing when a defendant's medical conditions will be considered "extraordinary and compelling reasons." Though the Court is not bound by this statement, *see Jones*, 980 F.3d at 1111, it offers compelling guidance in this instance. "Extraordinary and compelling" medical conditions are presented under § 1B1.13 when:

> i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> [or]
>
> (ii) The defendant is—
>
> > (I) suffering from a serious physical or medical condition,

---

[2] In *United States v. Lemons*, the court held that "a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction" unless the facts involve "a prisoner who is 'unable to receive benefit from a vaccine.'" 15 F.4th 747, 751 (6th Cir. 2021) (quoting *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021); and *United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021)). See also *United States v. Traylor*, 16 F.4th 485, 487 (6th Cir. 2021). Then in *United States v. McKinnie*, the court reiterated that, given the availability of COVID-19 vaccines, the pandemic itself would be considered an "extraordinary and compelling" reason only if there were "extenuating circumstances" present. 24 F.4th 583, 588 (6th Cir. 2022).

[3] Mr. Barrett has received a two-dose COVID-19 vaccine and a booster. (ECF No. 215-1 at 1).

[4] In his reply brief, Mr. Barrett states: "I do not argue that the Covid-19 pandemic creates [an] extraordinary or compelling reason justifying a reduction of my sentence. My extraordinary and compelling reason for a reduction is mismanagement of my health care and my medical conditions that substantially diminishes my ability to provide self-care in this institution." (*Id.*).

5

>> (II) suffering from a serious functional or cognitive impairment, or
>
>> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. §§ 1B1.13, Note 1(A).

Mr. Barrett lists his medical conditions as diabetes, hypertension, chronic kidney disease, bowel issues stemming from a gunshot wound, and post-traumatic stress disorder. (ECF No. 210 at 3–4). His kidney disease has progressed from stage 1 to stage 3 during his incarceration, and his eyesight is failing due to his conditions. (ECF No. 216 at 5). These ailments align with the policy note. All are "serious physical or medical condition[s]"; several, particularly the bowel issues and vision loss, "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility"; and none, save perhaps for hypertension, is the type of ailment for which recovery is expected. U.S.S.G. §§ 1B1.13, Note 1(A)(ii).

The Court finds that, COVID-19 aside, Mr. Barrett's medical conditions remain "extraordinary and compelling reasons" for compassionate release. His deteriorating physical and medical conditions hamper his ability to provide self-care and have made his incarceration "especially laborious." (ECF No. 210 at 2). Furthermore, the Court notes that the medical and mental health care available to Mr. Barrett via the Department of Veterans Affairs would allow him to better manage his conditions outside the prison facility. (*Id.* at 6).

Most of the Government's arguments are directed at COVID-19 (*see* ECF No. 215 at 4–5), which is not the basis for this holding. The Government also raises Mr. Barrett's lack of severe complications, however, and cites several cases from this Circuit where courts have denied

6

compassionate release for similar ailments. (*Id.*, discussing *United States v. Brummett*, 2020 WL 5525871, at *1 (6th Cir. Aug. 19, 2020) (hypertension, possible chronic obstructive pulmonary disease, and a gallbladder polyp); and *United States v. Green*, 2020 WL 4462303, at *4–5 (S.D. Ohio Aug. 4, 2020) (hypertension and emphysema)). To be clear, *Brummett* affirmed the district court solely on grounds of exhaustion and "decline[d] to address its alternative analysis of the motion's merits." 2020 WL 5525871, at *2. *Green*, meanwhile, involved a younger defendant with fewer and less serious medical conditions who was scheduled for release to home confinement within the month. 2020 WL 4462303, at *4–6. Neither is analogous to the case at hand. Finally, the Court rejects the Government's reasoning that Mr. Barrett should be required to show any more "severe complications" (ECF No. 215 at 5) than his Motion presents. U.S.S.G. § 1B1.13 requires a "serious" condition that "substantially diminishes" Mr. Barrett's ability to provide self-care while incarcerated, and Mr. Barrett's conditions meet that threshold.

As such, the Court again finds that Mr. Barrett has demonstrated "extraordinary and compelling reasons" for a sentence reduction under 18 U.S.C. § 3582(c).

### C. Section 3553 Sentencing Factors

Finally, the Court must consider "all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114. A court "need not specifically articulate its analysis of every single § 3553(a) factor"; rather, "the record *as a whole*" must "demonstrate[] that the pertinent factors were taken into account." *Id.* (alterations incorporated, internal quotation marks omitted). For a reviewing court, the record will consist of both the original sentencing proceeding and the compassionate release decision. *Id.*

18 U.S.C. § 3553(a) instructs a court to consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

7

    (2) the need for the sentence imposed—

        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B) to afford deterrence to criminal conduct;

        (C) to protect the public from further crimes of the defendant; and

        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3) the kinds of sentences available;

    (4) the kinds of sentences and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;

    (5) any pertinent policy statement . . . issued by the Sentencing Commission . . . ;

    (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

    (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

    Mr. Barrett argues that a sentence reduction "would not diminish the seriousness of [his] offense or present a risk to the public." (ECF No. 210 at 1). He emphasizes that he already has served a lengthy sentence (*Id.*)—more than 11 years as of the date of this Order, representing about 58% of the original term (or 68% if using the projected release date).[5] Mr. Barrett, now 59 years old, also points to recidivism studies showing that individuals are less likely to reoffend as they age. (*Id.* at 5). He notes that the Bureau of Prisons classifies both his custody level and risk of recidivism as "medium." (*Id.*). Additionally, Mr. Barrett discusses his rehabilitative pursuits: his

---

[5] Both these calculations give credit for Mr. Barrett's pretrial and presentencing detention, which began on or about July 11, 2011. (ECF No. 21). *See* 18 U.S.C. § 3585(b). The latter uses the projected release date reported by the Bureau of Prisons (ECF No. 215-2), which presumably accounts for good conduct time ("GCT") under 18 U.S.C. § 3624(b).

mentorship of other inmates and his younger family members, his work as a Chaplain Orderly, and his completion of 28 educational programs. (*Id.* at 5–6). Finally, Mr. Barrett explains that he is "pursuing a degree in psychology" with the goal of "understanding [him]self better" and using his experiences "to make a difference in the life of people like [him]." (*Id.* at 5).

The Government argues that due to the nature of Mr. Barrett's offense and sentence, the § 3553(a) factors continue to "strongly suggest that Barrett serve the balance of his sentence." (ECF No. 215 at 6). The Government's opposition to Mr. Barrett's first Motion, incorporated by reference, drew attention to Mr. Barrett's role in orchestrating the robbery, having recruited his own nephew and son into the plan; as well as his extensive criminal history, including multiple robbery, theft, and firearm offenses, which placed him in the highest criminal history category. (ECF No. 202 at 9–12).

When this Court denied Mr. Barrett's first Motion for Compassionate Release, it rested on the severity of his offense and the extent of his criminal history—which it likewise emphasized when originally imposing his sentence. (ECF Nos. 203 & 113). While these facts remain present and significant, others have changed. Since the denial of his first Motion for Compassionate Release, Mr. Barrett has completed more of his prison term, which speaks to the punitive aspect of his sentence and brings him closer to both the originally imposed sentence and the guideline minimum. *See* 18 U.S.C. § 3553(a)(2)(A), (4), (6). Next, the Court notes that Mr. Barrett's advancing age, deteriorating health, and progressing blindness decrease the likelihood of recidivism. At this point, he lacks the ability, much less the will, to revert to criminal pursuits, meaning there is less need to incapacitate him from harming the public. *See id.* § 3553(a)(2)(C). Finally, Mr. Barrett's educational pursuits and mentoring evidence his sincere commitment and success in meeting the rehabilitative objectives of his sentence. *See id.* § 3553(a)(2)(D).

Considering the totality of the circumstances, the weight of the sentencing factors supports Mr. Barrett's Motion. The Court is persuaded by Mr. Barrett's decreased likelihood of recidivism, his medical incapacitation, and his rehabilitation record. Without downplaying the seriousness of Mr. Barrett's offense and criminal history, the Court finds that a sentence reduction is warranted and just.

### IV.  CONCLUSION

For these reasons, Mr. Barrett's Motion for Compassionate Release (ECF Nos. 210 & 211) is **GRANTED**. Mr. Barrett's term of imprisonment is reduced to time served, and he shall commence his five-year period of supervised release subject to the same terms and conditions originally imposed. <u>The Court emphasizes to Mr. Barrett that strict compliance is expected. If he squanders this second chance by violating his supervised release terms, the Court could order him back to prison, despite his medical conditions</u>.

This Order is **STAYED** for up to fourteen days pending establishment of a release plan, including travel arrangements and residence verification. As soon as a plan is in place, Mr. Barrett shall be released without delay. If more than fourteen days are necessary to make appropriate arrangements, the parties shall notify the Court immediately and show cause why the stay should be extended.

**IT IS SO ORDERED.**

*[Signature]*
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: July 26, 2022**